# UNITED STATES DISTRICT COURT
for the
Eastern District of California

FILED
Jun 01, 2023
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

**SEALED**

| | |
|---|---|
| United States of America<br>v.<br>Miguel Magana Martinez<br><br>*Defendant(s)* | ) ) ) ) ) ) ) )<br>Case No. 5:23-mj-00021-CDB |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of   November 2019 to January 2023   in the county of   Kern   in the   Eastern   District of   California  , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 USC 286 | Conspiracy to submit false claims |
| 18 USC 1028(a)(7) | Identity theft |

This criminal complaint is based on these facts:
See attached affidavit, which is incorporated by reference as though fully set forth herein.

☑ Continued on the attached sheet.

*Stephanie A. Posey*
Digitally signed by Stephanie A. Posey
Date: 2023.05.31 16:11:58 -07'00'

*Complainant's signature*

Stephanie Posey, IRS:CI Special Agent
*Printed name and title*

Subscribed and sworn to before me pursuant to
Fed. R. Crim. P. 4.1 via telephone this date,
June 1, 2023.

*Judge's signature*

City and state:   Bakersfield, California     Hon. Christopher D. Baker, U.S. Magistrate Judge
*Printed name and title*

**AFFIDAVIT OF STEPHANIE POSEY**

I, Stephanie Posey, being duly sworn, depose and state as follows:

## I. INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the Internal Revenue Service: Criminal Investigations ("IRS:CI") and have been so employed since January 2019. I graduated from the Federal Law Enforcement Training Center in Glynco, Georgia, where I received training in criminal and financial investigative techniques. My duties include investigating criminal violations of the Internal Revenue Laws, Bank Secrecy Act, and Money Laundering Control Act of 1986, and investigating the filing of false claims against the government and related identity theft. Prior to becoming an IRS:CI Special Agent, I obtained a Masters' of Science degree in accounting from the University of Delaware. I also worked as an auditor at the professional services firm Deloitte Touche Tohmatsu Limited, an auditor at the Lawrence Livermore National Laboratory, a forensic accountant at the financial investigations company RGL Forensics, and a revenue agent at the IRS.

2. I make this affidavit in support of an application for a complaint to arrest **MIGUEL MAGANA MARTINEZ** for conspiring to submit false claims to the IRS and United States, and committing identity theft, in violation of 18 U.S.C. §§ 286 and 1028(a)(7), respectively.

3. The facts in this affidavit come from my personal observations, training and experience, and information obtained from other agents and witnesses involved in this case. This affidavit is meant to show that there is probable cause for the requested complaint. It does not set forth all of my knowledge about this case.

## II. APPLICABLE LAW

4. Title 18, United States Code, Section 286 (conspiracy) provides, "Whoever enters into any agreement, combination, or conspiracy to defraud the United States, or any department or agency thereof, by obtaining or aiding to obtain the payment or allowance of any false, fictitious or fraudulent claim, shall be fined under this title or imprisoned not more than ten years."

1

5. Title 18, United States Code, Section 287 (false claims) provides, "Whoever makes or presents to any person or officer in the civil, military, or naval service of the United States, or to any department or agency thereof, any claim upon or against the United States, or any department or agency thereof, knowing such claim to be false, fictitious, or fraudulent, shall be imprisoned not more than five years and subject to fine."

6. Title 18, United States Code, Section 1028(a)(7) (identify theft) provides, "Whoever . . . knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person with the intent to commit, or to aid or abet, or in connection with, any unlawful activity that constitutes a violation of Federal law, . . . [shall receive] a fine under this title or imprisonment up to five years, or both." The term "means of identification" means any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual, including any name, SSN, date of birth, official State or government issued driver's license or identification number, government passport number, employer, or taxpayer identification number.

### III. SUMMARY OF PROBABLE CAUSE

7. **MARTINEZ** is a primary target in a multi-million tax refund fraud scheme where individual federal income tax returns reported wages and withholdings from fabricated businesses. The scheme as been going on since at least November 2019 through at least January 2023.

8. The evidence against **MARTINEZ** includes: (1) the purported owners or operators of the fabricated businesses confirming that the businesses did not exist, (2) the personal identifying information for the purported owners or operators of the fabricated businesses, as well as the individuals in whose names the fraudulent tax returns were filed, being found on **MARTINEZ's** cloud account, (3) **MARTINEZ's** fingerprints being found on many of the fraudulent tax returns, (4) **MARTINEZ** frequently calling, texting, and visiting other individuals who are significantly involved in the scheme, and (5) **MARTINEZ** cashing, or coordinating the cashing of, several of the fraudulent tax refund checks. This is all despite **MARTINEZ's** contention, in his October 2022 voluntary interview with IRS:CI, that he was not involved in tax preparation for others.

## IV. STATEMENT OF PROBABLE CAUSE

9. This case started in early 2022 after the IRS identified businesses with large, outstanding account balances for unpaid, federal income tax withholdings for their employees. The IRS tried to contact the purported owners and operators of the businesses to collect the outstanding balances by issuing tax liens and garnishing wages, among other methods, but was unsuccessful. The IRS subsequently realized that the businesses had been fabricated, and that the purported owners and operators were unaware of the businesses and outstanding account balances.

10. The case concerns at least 665 fraudulent, individual federal income tax returns that were electronically filed with the IRS for tax years 2019, 2020, and 2021, and processed in years 2020, 2021, and 2022. The tax returns reported wages and withholdings from 24 fabricated businesses.

11. According to IRS records, of the 665 electronically filed tax returns, 500 were filed by tax preparer V.C. and 134 were filed by tax preparer C.O. in Kern County, State and Eastern District of California. The remaining tax returns were filed by other tax preparers.

12. The 665 electronically filed tax returns claimed over $4,400,000 in fraudulent tax refunds. Of that $4,400,000, over $1,100,000 was actually paid out through advance refund checks. An advance refund check is issued by a tax preparer to the taxpayer using a third-party financial institution. The tax preparer initiates the tax refund by issuing the advance refund check to the taxpayer. The IRS then pays the taxpayer's tax refund to an account setup by the tax preparer at the third-party financial institution. This allows the taxpayer to receive the refund sooner rather than later.

13. According to IRS records, the third-party financial institutions that V.C. and C.O. used for the advanced refund checks were Civista Bank and Metabank. And records produced by those banks in response to subpoenas showed that the advanced refund checks were primarily cashed at two check cashing businesses in Kern County, State and Eastern District of California, including L.L.

14. This case also concerns at least 19 fraudulent, individual federal income tax returns that were paper filed with the IRS for tax years 2017 and 2018, and processed in years 2019, 2020, and 2021.

The tax returns reported wages and withholdings from the same fabricated businesses as did the 665 electronically filed tax returns discussed above.

15. A paid tax preparer was not listed on the 19 paper filed tax returns. The tax returns claimed over $67,000 in fraudulent tax refunds. Of that $67,000, over $53,000 was actually paid out through United States Treasury refund checks. The Treasury refund checks were mailed to the individuals listed on the tax returns at the addresses provided for them and cashed at L.L.

16. The IRS determined that the 665 electronically filed, and 19 paper filed, tax returns were fraudulent because the tax returns reported wages and withholdings from 24 fabricated businesses.

17. The fabricated businesses received Employer Identification Numbers ("EIN") from the IRS. EINs are unique tax identification numbers that allow businesses to file tax documents. Generally speaking, to obtain EINs, the owners or operators of the businesses must provide the IRS with their Social Security Numbers ("SSN"), among other information.

18. The fabricated businesses, the businesses' EINs, and the names of the purported owners or operators whose SSNs were used for the EINs are listed in the table below:

| Business | Purported Owner or Operator |
|---|---|
| Alma House Cleaning | A.B. |
| Arroyo Gardening | L.A. |
| Ayon Contracting | A.A. |
| B E Cleaning Service | B.E. |
| Carpet Cleaning | D.L. |
| Cristinas Housekeeper | C.A. |
| Esquivel House Cleaning | A.E. |
| Home Construction | R.G. |
| Home Construction | E.C. |
| Home Remodeling | S.B. |
| Heavy Load Transport | C.W. |
| JACM Tree Services | J.M. |
| Janitorial Services | H.S. |
| Jess Pool Tech | J.G. |
| Monzon Concrete | R.M. |
| Multiload Transport | A.M. |
| Natalys Maid | N.H. |
| Olivas Detail | M.O. |

| | |
|---|---|
| Dianas Cleaning Service | D.L. |
| Oliveros Contractor | J.O. |
| Smart Roofing | C.D. |
| Pachecos Handyman Services | J.P. |
| Vacas Construction | F.V. |
| Yazmin's Housekeeping | Y.G. |

19. IRS:CI interviewed the purported owners or operators for 12 of the fabricated businesses: (1) A.A. for Ayon Contracting, (2) J.M. for JACM Tree Services, (3) B.E. for B E Cleaning Service, (4) A.E. for Equivel House Cleaning, (5) A.B. for Alma House Cleaning, (6) C.W. for Heavy Load Transport, (7) E.C. for Home Construction, (8) S.B. for Home Remodeling, (9) H.S. for Janitorial Services, (10) D.L. for Dianas Cleaning Service, (11) D.L. for Carpet Cleaning, and (12) A.M. for Multiload Transport. They confirmed that their SSNs had been stolen and used without their permission, and that the businesses did not exist.

20. IRS:CI tried to contact the purported owners or operators for the remaining 12 fabricated businesses but was unsuccessful. Nonetheless, IRS:CI determined that these businesses were fake. This was because either the businesses did not file any federal business income tax returns, the businesses did not pay any withholdings for their employees, the purported owners or operators did not respond to notices of tax liens that IRS filed against them or other written correspondence that IRS mailed to the addresses that had been provided for them in their EIN applications, the purported owners or operators did not reside at those addresses when IRS checked, and/or IRS:CI was unable to find reliable contact information for the purported owners or operators in law enforcement databases that draw on thousands of publicly available records.

A. **MARTINEZ' involvement in the tax refund fraud scheme**

   i. **MARTINEZ's suspicious possession of tax documents and denial that he is involved in tax preparation services**

21. **MARTINEZ** has a history with suspicious possession of tax documents. According to a police report from the Bakersfield Police Department ("BPD"), **MARTINEZ** was pulled over for a traffic violation in 2016 and seven tax refund checks were found in his vehicle. The checks were

5

payable to other people who lived in Texas and other states, and several of the checks had already been endorsed on the back. **MARTINEZ** told the officers that he found the checks lying on the ground by his mailbox in Kern County, State and Eastern District of California. Based on my training and experience, it is unusual to find checks belonging to different people, in different states, with endorsements, lying on the ground by a mailbox. Therefore, I believe that **MARTINEZ** lied to the officers about the checks.

22. Moreover, **MARTINEZ** has no background in legitimate tax preparation for others. According to the BPD police report, **MARTINEZ** said that he worked at G.F., which is a farm labor contractor. Wells Fargo bank records produced in response to a subpoena also showed that **MARTINEZ** opened two bank accounts in 2017 for a jewelry business and a party rental business. The accounts were opened in **MARTINEZ's** name doing business as Magana Jewelry and MG Party Rentals, and these were the only businesses from which he reported income and expenses on his personal income tax returns for the tax years 2018 through 2022. Finally, as discussed below, **MARTINEZ** recently agreed to a voluntarily interview with IRS:CI where he said that he just had a jewelry business and party rental business, and that he did not prepare taxes for others.

        **ii.**    <u>**MARTINEZ's fingerprints were found on fraudulent tax returns**</u>

23. The IRS National Forensic Laboratory obtained fingerprints from 35 payroll tax returns that were mailed to IRS for some the fabricated businesses from November 2019 through May 2021, as well as from the 19 paper filed tax returns discussed above. A payroll tax return is a form that businesses file with IRS on a quarterly basis to report, among other things, wages paid and federal income taxes withheld for the businesses' employees. The fingerprints were compared, and matched to, **MARTINEZ's** fingerprints that the United States Department of Homeland Security ("DHS") obtained from him in 2014 when he was caught illegally crossing the border from Mexico into the United States with false identification documents.

### iii. **Toll records show MARTINEZ exchanged several calls and text messages with an associate who provided V.C. information needed to file fraudulent returns**

24. In October 2022, IRS:CI executed a federal search warrant for the office of V.C., who was the tax preparer that filed 500 of the fraudulent tax returns as discussed above. The warrant was issued by the Honorable Erica P. Grosjean in the Eastern District of California with Case No. 1:22-SW-00437-EPG. V.C. was in Mexico at the time and flew to Los Angeles International Airport a few days later where he was searched pursuant to a federal search warrant issued by the Honorable Rozella A. Oliver in the Central District of California with Case No. 2:22-MJ-4148. During the search, V.C. agreed to a voluntary interview with IRS:CI. V.C. said that he did not know **MARTINEZ**. He did, however, know J.L. V.C. explained that J.L. would provide him with the information that he needed to prepare the fraudulent tax returns. This included names, addresses, identification cards, and wage and withholding statements from the fabricated businesses for the individuals listed on the tax returns. J.L. would then come back to pick up the advanced refund checks that V.C. printed for the tax returns and pay V.C. in cash.

25. Subscriber records produced by Verizon and T-Mobile in response to subpoenas showed that **MARTINEZ** has had cell phone number ending 6664 since at least August 2014, and that J.L. has had cell phone numbers ending 9897 and ending 6092 since at least July 2021 and September 2021, respectively. Toll records produced by Verizon for **MARTINEZ's** cell phone number showed that he and J.L. exchanged over 325 calls and 40 text messages and multi-media messages from August 2021 through October 2022.

26. Importantly, when IRS:CI executed the search warrants for V.C.'s office, **MARTINEZ** and J.L. called each other over five times that day.

### iv. **Toll records show MARTINEZ exchanged several calls and texts with C.O. who filed fraudulent tax returns**

27. In October 2022, IRS:CI executed federal search warrants for the office and person of C.O., who was the tax preparer that filed 134 of the fraudulent tax returns as discussed above. The

7

warrants were issued by the Honorable Erica P. Grosjean in the Eastern District of California with Case No. 1:22-SW-00437-EPG.  During the searches, C.O. agreed to a voluntary interview with IRS:CI.  C.O. said that **MARTINEZ** would routinely call her about tax refund quotes.  For example, C.O. explained that **MARTINEZ** would call her and provide wage information, and then she would provide him with the estimated refund amount based on that information.

28. IRS:CI reviewed C.O.'s cell phone and confirmed her cell phone number.  Although IRS:CI only found one record of a call between **MARTINEZ** and C.O. on C.O.'s cell phone, toll records produced by Verizon for **MARTINEZ's** cell phone number showed that he and C.O. exchanged over 150 phone calls and 100 text messages and multi-media messages with each other from September 2021 through October 2022.

v. **Key interviews further implicate MARTINEZ in the tax refund fraud scheme**

1. **Interview with V.C.**

29. As discussed above, in October 2022, V.C. agreed to a voluntary interview with IRS:CI and said that J.L. would provide him with the information that he needed to prepare the fraudulent tax returns he filed.  V.C. explained that J.L. told him he was working for "El Jefe," which is a Spanish term that means the boss or leader.

30. V.C. also said that he created a folder on his computer to track the fraudulent tax returns he filed because he felt like something was wrong.  IRS:CI found a file on V.C.'s computer that contained information related to many of the fraudulent tax returns and was labelled "Jorge Contratista." Contrastista is a Spanish word for contractor.  Therefore, I believe that this label was referring to J.L. as being a contractor.

2. **Owner of L.L. identified MARTINEZ as the person cashing the fraudulent tax refund checks**

31. In December 2022, J.D., who is the owner of L.L. where several of the fraudulent tax refund checks were cashed, agreed to a voluntary interview with IRS:CI. J.D. said that **MARTINEZ** initially tried to cash several tax refund checks without the individuals listed on the checks being

8

present. J.D. explained that he told **MARTINEZ** the individuals had to be present. But then the individuals came into J.D.'s store and asked that **MARTINEZ** be allowed to cash the tax refund checks without them being there, and he allowed **MARTINEZ** to do so. J.D. further explained that he charged his normal fee of one to two percent of the check value to cash the tax refund checks, and that sometimes he cashed the checks for free if **MARTINEZ** purchased other items from the store.

32. J.D. also said that sometimes individuals tried to cash tax refund checks without identification. J.D. explained that the individuals would tell him **MARTINEZ** sent them, and that **MARTINEZ** would subsequently text him copies of their identification cards. He would then cash the tax refund checks. J.D. produced copies of the text messages to IRS:CI in response to a subpoena.

### 3. Interview with MARTINEZ

33. On October 27, 2022, **MARTINEZ** agreed to a voluntary interview with IRS:CI. **MARTINEZ** claimed that he only spoke Spanish. So, IRS:CI had an analyst who speaks Spanish present for the interview to translate for him.

34. **MARTINEZ** said that he had no knowledge of, or involvement in, tax preparation for others. **MARTINEZ** explained that he just sold gold and ran a party rental business.

35. When IRS-CI asked **MARTINEZ** why his fingerprints were found on some of the fraudulent tax returns and related documents, **MARTINEZ** said that he did not touch any of the returns or documents.

36. When IRS:CI asked **MARTINEZ** about his relationship with J.L., who gave tax preparer V.C. the information that he needed to file 500 of the fraudulent tax returns, **MARTINEZ** said that he only knew J.L. as someone who installed stereos and did not work with him on taxes. **MARTINEZ** also said that he did not have any text messages with J.L. because he did not see him that often. As discussed above, however, toll records showed that **MARTINEZ** and J.L. have exchanged hundreds of calls, text messages, and multi-media messages with each other over the past couple of years.

37. When IRS:CI asked **MARTINEZ** about his relationship C.O., who was the tax preparer that filed 134 of the fraudulent tax returns, **MARTINEZ** said that she only helped him get a divorce and

9

that he had once talked to her about buying a property she owned.  As discussed above, however, C.O. told IRS:CI that **MARTINEZ** routinely called her requesting tax refund quotes.

38. When IRS:CI asked **MARTINEZ** for consent to search his cell phone, **MARTINEZ** declined.  **MARTINEZ** was subsequently served with a grand jury subpoena, but it was cancelled after IRS:CI found additional evidence that changed his status in the case from a subject to a target.

vi. **MARTINEZ's cloud account contained substantial incriminating evidence against him**

39. In January 2023, IRS:CI executed a federal search warrant for **MARTINEZ's** Verizon Cloud account.  The warrant was issued by the Honorable Christopher D. Baker in the Eastern District of California with Case No. 5:23-SW-00003-CDB.

40. **MARTINEZ's** cloud account contained over 1,400 photographs and other files that were uploaded to the account sometime between August 2022 and January 2023.  This included white envelopes with return addresses for the following individuals: E.C., D.L., D.L., and C.W.  As discussed above, IRS:CI interviewed these individuals because their SSNs were used for the EINs for some of the 24 fabricated businesses, and they confirmed the fraud.

41. **MARTINEZ's** cloud account also included photographs of Mexican identification cards for L.D. and four other individuals, as well as letters from the IRS regarding the assignment of individual taxpayer identification numbers ("ITIN") for these individuals.  ITINs are unique, IRS tax processing numbers for nonresident and resident aliens, their spouses, and their dependents who cannot get SSNs.

42. **MARTINEZ's** cloud account also included photographs of tax refund checks for six individuals as well as the backs of two checks with the signatures of, and ITINs for, two of these same individuals.  These photographs further contradict **MARTINEZ's** contention that he was not involved in tax preparation for others.

vii. **MARTINEZ's involvement with fraudulent tax return for L.D. as an example**

43. An individual federal income tax return for L.D., whose Mexican identification card and ITIN were found in **MARTINEZ's** cloud account as discussed above, was among the 500 fraudulent tax

returns that V.C. electronically filed. According to IRS records, a fraudulent tax return for L.D., for tax year 2021, was electronically filed by V.C. on April 11, 2022. The tax return reported wages and withholdings from the fabricated business, Home Remodeling, and claimed a refund of over $9,000. The IRS deemed the tax return fraudulent and the refund was not paid out.

44. Importantly, another fraudulent tax return for L.D., for tax year 2020, was paper filed on May 9, 2022. A paid tax preparer was not listed on the tax return. The tax return, however, reported wages and withholdings from the fabricated business, Home Remodeling, and claimed a refund of over $10,000 that was paid out through a Treasury refund check. J.D. confirmed the Treasury refund check was cashed at L.L. on May 26, 2022. J.D. also produced a text message from **MARTINEZ**, dated the same day, with a picture of L.D.'s Mexican identification card that J.D. had requested before cashing the check.

## V. SEALING REQUEST

45. I request that the Court order all papers in support of the requested criminal complaint be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all the targets of the investigation.

46. Therefore, there is good cause to seal these documents because their premature disclosure may jeopardize the investigation, including by giving the targets an opportunity to destroy or tamper with evidence, change patterns of behavior, notify confederates, and flee from prosecution.

///
///
///

11

## VI. CONCLUSION

47. For these reasons, I request the Court issue the requested complaint.

I swear under penalty of perjury the foregoing information is true to the best of my knowledge, information, and belief:

                                                           Stephanie A. Posey  
                                                           *Digitally signed by Stephanie A. Posey*  
                                                           *Date: 2023.05.31 16:14:36 -07'00'*  
                                           Stephanie Posey  
                                           IRS:CI Special Agent

Approved as to form by:

/s/ Joseph Barton  
_____  
Joseph Barton  
Assistant United States Attorney

Affidavit submitted by email/pdf and attested to me as true and accurate by telephone consistent with Fed. R. Crim P. 4(d) and 4.1 before me this ___1st___ day of June 2023:

                                                        _____  
                                                        Honorable Christopher D. Baker  
                                                        United States Magistrate Judge